IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS, PEORIA DIVISION

| | |
|---|---|
| HOSPITAL SISTERS HEALTH SYSTEM, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 20-cv-1295 ) |
| GREAT AMERICAN INSURANCE COMPANY, | ) ) ) ) |
| Defendant. | ) |

## OPINION

TOM SCHANZLE-HASKINS, U.S. MAGISTRATE JUDGE:

This matter comes before the Court on Defendant Great American Insurance Company's (Great American) Motion to Compel Production of Privileged Communications Pre-Dating March 8, 2018 (d/e 18) (Motion). For the reasons stated below, the Motion is ALLOWED in part.

## BACKGROUND

Great American issued an insurance policy (Policy) to Hospital Sisters. The term of the Policy began on July 1, 2017 and ended on July 1, 2018. Motion, Ex. 1, Policy Excerpts, at 1. The Policy covered losses resulting directly from dishonest acts committed by an employee of Hospital Sisters and discovered during the term of the Policy. Id., at 2, ¶ B.1. The Policy required Hospital Sisters to notify Great American as soon as

possible after "The Risk Management Department and/or Corporate Legal Department and/or Officer discover(s) a loss or a situation that may result in a loss . . .." Id., at 5, Endorsement No. 5. Hospital Sisters further agreed to "Cooperate with us in the investigation and settlement of any claim." Id., at 4, Condition E.7.

On November 8, 2018, Hospital Sisters submitted a Proof of Loss on the Policy to Great American. Motion, Exhibit 2, Proof of Loss. The Proof of Loss stated, in part, "We hereby make claim for Loss of $5,161,500, occurring through fraudulent act(s) with the loss occurring in January 2015 and discovered on March 8, 2018." Id. From November 2012 through October 2015, Jeffrey Ogletree was Hospital Sisters' Vice President of Revenue Cycle. Hospital Sisters alleges that Ogletree conspired with an entity called Free Choice to fraudulently induce Hospital Sisters to donate $5,161,500 to Free Choice to fund the payment of premiums for medical insurance policies for uninsured individuals. Ogletree and his co-conspirators at Free Choice absconded with the money. See Complaint for Declaratory Judgment, Breach of Contract, and Extra-Contractual Relief (d/e 1) (Complaint) ¶¶ 17-28.

Great American denied the claim, at least in part, because Great American determined that Hospital Sisters discovered the loss long before

March 8, 2018 and even before the Policy term began on July 1, 2017. See Motion, attached Great American Insurance Company's Memorandum in Support of Its Motion to Compel Production of Privileged Communications Pre-Dating March 8, 2018, at 1.  Hospital Sisters brought this action to enforce its claim for the $5,161,500 loss (Loss).

Great American served Hospital Sisters with interrogatories and requests for production of documents.  Interrogatory No. 3 asked for the following information:

> Interrogatory No. 3: State the date on which you discovered the alleged loss described in the complaint, identifying in your answer the person who discovered the alleged loss, what was discovered, and how it was discovered.

Motion, Ex. 7, Hospital Sisters Supplemental Answer to Interrogatory No. 3. Hospital Sisters responded, in relevant part:

> Hospital Sisters first "discovered" the loss on March 8, 2018. On March 8, 2018, Mark Novak, Hospital Sisters' Vice President, System Responsibility Officer, received an email from Paul Libassi, an Investigator with the District Attorney's Office in Riverside County, California. That email attached a news release announcing that four men had been arrested in a case involving health care fraud, money laundering and tax evasion. The news release identified the four men as Brian Andrew La Porte, Dennis Davin Bonavilla, Jeffrey D. Ogletree, and Babar Igbal, and stated that the Riverside County District Attorney's office had filed a 33-count complaint against the four men that included charges of conspiracy, health care fraud, grand theft, money laundering, tax evasion, and identity theft. The news release stated that Mr. La Porte had created Free Choice Health Care Foundation ("Free Choice") and referenced

Hospital Sisters' payments to Free Choice that were supposed to be used to buy health insurance, but that some of these funds allegedly had been used for other purposes, including "paying Ogletree $1 million and additional money so he could pay cash" for a home in Idaho and that other "funds were paid to limited liability companies owned by La Porte, Ogletree, and Bonavilla." Mr. Novak emailed the news release to Michael Cottrell, Chief Financial Officer, Mary Starmann-Harrison, President and Chief Executive Officer, Amy Bulpitt, Vice President and General Counsel, Brian Reardon, Vice President, External Relations, Caitie Sheehan, Vice President, Advocacy and Communications, and Krista Rock, System Director of Managed Care.

<u>Id.</u>

Mark Novak, Hospital Sisters' Vice President, System Responsibility Officer, verified the supplemental answer to Interrogatory 3:

## VERIFICATION

I, Mark A. Novak, declare as follows:

I am acting as agent for Plaintiff/Counterclaim-Defendant Hospital Sisters Health System ("Hospital Sisters") in connection with the foregoing **PLAINTIFF/COUNTERCLAIM-DEFENDANT'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO GREAT AMERICAN INSURANCE COMPANY'S FIRST SET OF INTERROGATORIES,** and in my role as such, I hereby certify that the responses provided therein are true and correct to the best of my know]edge, information, and belief based upon information and documents available to me after reasonable investigation.
    I declare under penalty of perjury that the foregoing is true and correct.

    Dated this 26 day of March 2021
                                                  <u>s/Mark A. Novak</u>

Id. (emphasis in the original).[1]

In response to Great American's document production request, Hospital Sisters produced many documents, and also produced a log of responsive documents withheld on claims of privilege (privilege log). Great American separately served a subpoena on Hospital Sisters' counsel McDermott, Will, and Emery LLP (McDermott). McDermott also provided Great American with a privilege log of withheld responsive documents.

Great American moves to compel Hospital Sisters and McDermott to produce 493 documents listed on the Hospital Sisters and McDermott's privilege logs that pre-date March 8, 2018 (Withheld Documents). Great American asserts that the privilege claims have been waived as to these documents. Hospital Sisters opposes the Motion.

## ANALYSIS

Great American moves to compel on the grounds that Hospital Sisters waived its attorney-client and work product privileges (Privileges) for the Withheld Documents.[2] Great American argues that Hospital Sisters contractually agreed in the Policy to disclose when its Corporate Legal Department discovered the Loss. The Policy covered losses discovered

---

[1] The date of the month that Novak signed is unclear. The date may be March 6, 2021.
[2] Great American does not dispute that the Withheld Documents meet the definition of documents subject to either the attorney-client privilege or the work product privilege.

during the Policy term. The Policy stated that Hospital Sisters discovered a loss when "The Risk Management Department and/or Corporate Legal Department and/or Officer discover(s) a loss or a situation that may result in a loss . . .." <u>Policy Excerpts</u>, <u>Endorsement No. 5</u>. Thus, the Corporate Legal Department's discovery of the Loss could determine whether Hospital Sisters discovered the Loss during the Policy term and whether Hospital Sisters notified Great American of the Loss as soon as possible. Hospital Sisters further agreed to cooperate in the investigation of the Proof of Loss. Great American argues that Hospital Sisters thereby agreed to cooperate with Great American in Great American's investigation to determine: (1) whether the Corporate Legal Department discovered the Loss and, if so, (2) when the Corporate Legal Department discovered the Loss. In so doing, Hospital Sisters waived the Privileges for Withheld Documents.

The Illinois Appellate Court decision in <u>Sharp v. Trans Union, LLC</u>, 845 N.E.2d 719, 726-29 (Ill. App. 1st Dist. 2006), supports Great American's argument, in part. In <u>Sharp</u>, Trans Union, LLC (Trans Union), purchased professional liability insurance coverage. The Alec Sharp Syndicate at Lloyd's of London (Sharp) was one of the underwriters of the insurance. The terms of Trans Union's insurance policy were extensively negotiated

both before and after the inception of the policy. Ultimately, the Trans Union policy contained an exclusion provision, Exclusion (g), which excluded "any claim arising out of acts, errors, violations or omissions that took place prior to the effective date of this Insurance, if the [General Counsel] of the Named Assured on the effective date knew that such acts, errors, violations or omissions might be expected to be the basis of a Claim." Sharp, 845 N.E.2d at 724. Trans Union further agreed to cooperate in the investigation of claims. 845 N.E.2d at 727.

Trans Union filed claims for coverage of several suits filed against it for violation of the Fair Credit Reporting Act. Sharp filed a declaratory judgment action seeking a declaration that 14 actions filed after the inception of the policy were not covered. Id. Sharp served discovery requests to ascertain when Trans Union's General Counsel knew that the acts, errors, violations, or omissions alleged in the 14 actions might be expected to be the basis of a claim. Trans Union withheld the documents on a claim of Privilege. The trial court ordered Trans Union to produce the documents.

The Appellate Court in Sharp upheld the trial court. The Appellate Court explained:

> The policy effectively defines known losses in terms of the
> general counsel's knowledge by excluding errors and omissions

> that Trans Union's general counsel knew might be the basis of a future claim. The only way to determine whether Trans Union's general counsel knew that a particular act might be the basis of a claim would be to look at the general counsel's legal reasoning and analysis of that act.

Sharp, 845 N.E.2d at 727-28.  The Court further explained that Trans Union agreed to cooperate in the investigation of claims.  The Court concluded:

> Reading the specific language of the cooperation clause together with exclusion (g), we find that Trans Union agreed to share the legal reasoning and analysis of its general counsel regarding whether there might be future claims based on its sale of target marketing information with the Underwriters in a coverage investigation. Although such information may be privileged because it is legal advice given by the general counsel to the corporation about whether its actions could result in liability, Trans Union, in agreeing to a policy with such particular language, has agreed to share this information with the Underwriters under these circumstances.

Sharp, 845 N.E.2d at 728.  The Appellate Court also relied on the "strong public policy in Illinois of encouraging disclosure between insurer and insured, 'with an eye toward ascertaining that truth which is essential to the proper disposition of a lawsuit.'" Id. (quoting Waste Management v. International Surplus Lines Insurance Co., 144 Ill.2d 178, 192, 579 N.E.2d 322, 327-28 (1991)).  The Appellate Court ordered Trans Union to produce the documents showing when the General Counsel knew the underlying acts might be expected to be the basis of the claims in the underlying 14 lawsuits at issue.  845 N.E.2d at 729.

The Court agrees that the Sharp decision applies here. Hospital Sisters agreed that claims could become discovered claims covered by the Policy based on the knowledge of the Corporate Legal Department. The only way to determine when the Corporate Legal Department discovered the Loss would be to look at the Corporate Legal Department's "legal reasoning and analysis" and the information that it had about the Loss. Hospital Sisters further agreed to cooperate with Great American in its investigation and provide this information. The Privileges were thereby waived as to documents that contain information related to when Hospital Sisters' Corporate Legal Department discovered the Loss. All such documents listed on the Privilege Logs must be produced.

Hospital Sisters attempts to distinguish Sharp on the facts and on the nature of the actions. The Court is not persuaded. The policy in Sharp and the Policy both defined covered claims and uncovered claims based on when the insured's corporate attorney's had knowledge of the facts giving rise to claims. Both policies required the insured to cooperate in the investigation of claims. These key terms are substantially similar in both cases. The holding in Sharp applies regardless of the factual and procedural distinctions raised.

Illinois Supreme Court, however, has not overruled the <u>Waste Management</u> decision.  The Illinois Supreme Court cited <u>Waste Management</u> extensively as late as 2015.  <u>See</u> <u>Brunton v. Kruger</u>, 2015 IL 117663, ¶¶ 80-82, 32 N.E.3d 567, 581 (Ill. 2015).  This Court must follow the Illinois Supreme Court in this case, and <u>Waste Management</u> is still good law.  The Court sees no basis to disregard the <u>Sharp</u> decision because the Appellate Court also decided to follow the Illinois Supreme Court.

Great American argues that the Policy waives the Privileges completely.  The Court disagrees.  The Policy effected a waiver of the Privileges for documents related to the matter addressed in the Policy: when did Hospital Sisters' Corporate Legal Department discover the Loss.  The Policy language did not waive the Privileges for any document unrelated to that issue.

Great American argues that Hospital Sisters waived the Privileges in its answer to Interrogatory 3.  The interrogatory asks for detailed information on the date that Hospital Sisters discovered the Loss.   Hospital Sisters answered with detailed information about when it discovered the Loss, as quoted above.  Hospital Sisters Vice President Novak verified the answer, again quoted above.  Novak relied on his personal knowledge as well as documents available to him after reasonable investigation.  Great

American argues that Novak must have relied on privileged documents found after reasonable investigation, and his reliance on such documents waives the Privileges. The Court disagrees. The verification does not say he relied or revealed privileged information. Hospital Sisters answer to Interrogatory No. 3 did not waive the Privileges.

Great American argues in the alternative that Hospital Sisters waived the Privileges because the answer to interrogatory 3 states that Novak emailed to Hospital Sisters' General Counsel and other executives a press release from prosecutors in California announcing the prosecution of Ogletree and his co-conspirators on March 8, 2018. The Court disagrees. Sending a press release to the General Counsel is not a confidential communication subject to the Privileges. Disclosing that dissemination of information, therefore, is not a waiver.

Great American relies on Selby v. O'Dea, 2020 IL App (1st) 181951, 156 N.E.3d 1212 (Ill. App. 1st Dist. 2020) to support its waivers arguments. The attorney in Selby submitted an affidavit in support of a summary judgment motion in which the attorney talked about his confidential communications with his client. See Selby, 202 IL App (1st) 181951 ¶¶ 170-97, 156 N.E.3d at 1245-47. The attorney's representations about his communications waived the attorney-client privilege. Novak did not discuss

confidential communications with counsel. Novak just said he sent an outside press release to General Counsel. <u>Selby</u> does not apply. Hospital Sisters did not expressly or impliedly waive its Privileges for all documents. Hospital Sisters, however, waived the Privileges as to documents that contain information related to when Hospital Sisters' Corporate Legal Department discovered the Loss.

Great American also asks for an <u>in camera</u> inspection. The Court sees no need for such an inspection. Hospital Sisters is ordered to review the Withheld Documents and produce those documents that contain information related to when Hospital Sisters' Corporate Legal Department discovered the Loss.

THEREFORE, IT IS ORDERED that Defendant Great American Insurance Company's Motion to Compel Production of Privileged Communications Pre-Dating March 8, 2018 (d/e 18) is ALLOWED in part. Plaintiff Hospital Sisters Health Systems is ordered to produce by August 31, 2021, the Withheld Documents that contain information related to when Hospital Sisters' Corporate Legal Department discovered the Loss.

ENTER:   August 17, 2021

*s/ Tom Schanzle-Haskins*
TOM SCHANZLE-HASKINS
UNITED STATES MAGISTRATE JUDGE