IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

| | | |
|---|---|---|
| HOSPITAL SISTERS HEALTH SYSTEM, | ) ) ) | |
| Plaintiff/ Counterclaim-Defendant, | ) ) ) ) ) | |
| v. | ) ) ) | Case No. 20-cv-1295 |
| GREAT AMERICAN INS. CO., | ) ) ) | |
| Defendant/ Counterclaimant. | ) ) | |

## OPINION

TOM SCHANZLE-HASKINS, U.S. MAGISTRATE JUDGE:

This matter comes before the Court on Defendant/Counterclaimant Great American Insurance Company's (Great American) Motion to Compel Discovery Related to Damages (d/e 24) (Motion). For the reasons stated below, the Motion is DENIED.

## BACKGROUND

Plaintiff Hospital Sisters Health System (Hospital Sisters) brought this action to recover on a claim for loss filed on a Crime Protection Policy (Policy) issued by Defendant Great American. On July 1, 2017, Great American issued the Policy to Hospital Sisters to cover certain types of loss from theft and other wrongful activity. Complaint for Declaratory Judgment,

Breach of Contract, and Extra-Contractual Relief (d/e 1) (Complaint), attached Policy. The coverage included coverage for employee dishonesty. The provision for coverage for losses due to employee dishonesty provided:

> We will pay for loss resulting directly from **employee dishonesty.**

Policy, Endorsement No. 8 (emphasis in the original). The Policy defined employee dishonesty as:

> 1. **Employee Dishonesty** means only **theft** by an **employee**, whether identified or not, acting alone or in collusion with other persons, except you or a partner.
>
> 2. **Occurrence** means all loss caused by, or involving, one or more **employees**, whether the result of a single act or a series of acts.
>
> 3. **Theft** means the unlawful taking of **money**, **securities** and **other property** to the deprivation of the Insured.

Id. (emphasis in the original).

The Policy also had a provision for allocating any amounts of stolen money that were recovered by either Hospital Sisters or Great American. The Recoveries provision stated:

> **19. Recoveries**
>
> a.  Recoveries, whether effected by you or us, shall be applied, net of the expense of such recovery, in the following manner and order:

  (1) to the satisfaction of your loss which would otherwise have been paid under this Policy but for the fact that it is in excess of the Limit of Insurance and the Deductible Amount, if any;

  (2) then to us, until we are reimbursed for the settlement made;

  (3) then to you, until you are reimbursed for that part of the loss equal to the Deductible Amount, if any.

  (4) then to you for any loss not covered by this Policy.

 **b.** Recoveries do not include any recovery from insurance, suretyship, reinsurance, security or indemnity taken for our benefit.

 **c.** If original securities are recovered after duplicates of such securities have been issued, the original securities shall be surrendered to us.

Policy, ¶ E.18 Recoveries (emphasis in the original). The Court could not find a definition of the term Recoveries in the Policy.

On November 13, 2018, Hospital Sisters filed a claim for loss under the Policy (Claim) for money stolen by a former employee Jeffrey Ogletree.[1] Ogletree was Hospital Sisters' Vice President of Revenue Cycle from November 2012 through October 2015. Hospital Sisters alleges that

---

[1] The Policy covered losses discovered during the term of the Policy. See Policy ¶ B.1; Opinion entered August 17, 2021 (d/e 26), at 1-2. Hospital Sisters allege that the loss was discovered during the term of the Policy. Complaint ¶ 29.

Ogletree conspired with individuals operating an organization called Free Choice Healthcare Foundation (Free Choice) to induce and donate a total of $5,161,500, which funds were to be used to pay health insurance premiums for indigent individuals using hospital services at Hospital Sisters facilities. Hospital Sisters submitted a proof of loss to Great American for $5,161,500.  Great American denied the Claim.  Hospital Sisters brought this action to secure payment of the Claim.  See Complaint, at 4-7.

Hospital Sisters stated in responses to interrogatories that Ogletree and his co-conspirators stole $4,323,549 of the $5,161,500 donated to Free Choice. The remaining $837,951 was used to pay premiums on health insurance policies for indigent individuals and administrative costs. Hospital Sisters limits its claim to $3,823,549 after deducting the $500,000 deductible under the Policy from the stolen $4,323,549.  Motion, attached Great American Insurance Company's Memorandum in Support of its Motion to Compel Discovery Related to Damages, at 2-3.

After reviewing Hospital Sisters' discovery responses, Great American propounded interrogatories and requests to produce documents related to revenues received by Hospital Sisters from the health insurance policies that Free Choice purchased with the $837,951 for indigent individuals who used the services of Hospital Sisters (hereinafter

collectively referred to as Health Insurance Revenues).  Hospital Sisters objected to these requests on grounds of relevance as well as undue burden because the information requested contained confidential information from patient files. Great American brings this action to compel production of this information regarding Health Insurance Revenues.

This Court sustains Hospital Sisters' relevance objection to discovery about Health Insurance Revenues. Hospital Sisters filed a claim for loss from employee dishonesty.  Under the terms of the Policy, employee dishonesty is limited to theft, "**Theft** means the unlawful taking of **money**, **securities** and **other property** to the deprivation of the Insured." Policy, Endorsement 8. Ogletree and his co-conspirators took $3,823,549 to the deprivation of Hospital Sisters. Great American could propound discovery requests for information regarding whether Hospital Sisters recovered any of the $3,823,549 that Ogletree stole, including any revenues that Hospital Sisters lost from the $3,823,549.  That would be relevant discovery.

Great American discovery requests at issue, however, seek information regarding the Health Insurance Revenues.  Great American states that it seeks this information to attempt to discover whether Hospital Sisters recovered any part of the loss by receiving a benefit from Health Insurance Revenues. The problem with this line of inquiry, is that Ogletree

did not unlawfully take the $837,951 spent to purchase the health insurance policies for indigent individuals, and Hospital Sisters has stated already in discovery that it does not seek recovery of the $837,951 as part of the loss. Furthermore, none of the stolen money was used to purchase the health insurance policies, so none of the Health Insurance Revenues is traceable to the stolen money. Therefore, the inquiry is not relevant to identify any possible benefit that Hospital Sisters received or recovered from the loss. The relevance objection is sustained.

Great American argues that this case is governed by the decision in Kinzer v. Fidelity and Deposit Co. of Maryland, 273 Ill.App.3d 211, 652 N.E.2d 20 (Ill. App. Ct. 1st Dist. 1995) (Kinzer III). Kinzer III is the third appellate decision in a line of cases, following after Kinzer v. Chicago, 169 Ill.App.3d 447, 523 N.E.2d 919 (Ill. App. 1st Dist. 1988), modified in part and rev'd in part, 128 Ill.2d 437, 539 N.E.2d 1216 (Ill. 1989) (Kinzer I); and Kinzer v. Fidelity & Deposit Co., 213 Ill.App.3d 606, 572 N.E.2d 1151 (Ill. App. 1st Dist. 1991), (Kinzer II). These opinions all concerned a taxpayer suit brought against the City of Chicago, Illinois, and some of its officers and employees who spent money on public festivals in Chicago without proper authorization from the City Council. As such, the expenditures were illegal. See Kinzer I, 539 N.E.2d at 1217-19. The Kinzer

III opinion addressed a claim against a surety company that issued a surety bond for certain defendant officers of the City of Chicago who approved the illegal expenditures. The Kinzer III Court agreed that the surety could properly offset the net benefit that the City of Chicago received from the public festivals in calculating the amount of the loss covered by the surety bond. Kinzer III, 652 N.E.2d 26-27. Great American argues that under Kinzer III, the discovery requests are relevant because the Health Insurance Revenues should be offset from the loss claimed here.

    Great American is mistaken. In Kinzer III, the illegally spent money was spent to benefit the City of Chicago by funding the public festivals. Chicago received a benefit from those illegal expenditures, and so, a setoff is appropriate as a partial recovery from the illegal expenditures. Under the terms of the Policy, Hospital Sisters' loss was the theft by the employee Ogletree. The theft, as defined in the Policy, was the $3,823,549 wrongfully taken to the deprivation of Hospital Sisters. Ogletree did not steal the $837,951 used pay premiums on the Health Insurance Policies. Because the stolen funds were not used to purchase the health insurance policies, the Health Insurance Revenues were not derived from the stolen money and no setoff is appropriate here. Therefore, Great American's discovery

requests regarding Health Insurance Revenues are not relevant. Hospital Sisters' relevance objections to these requests are sustained.

THEREFORE, IT IS ORDERED that Defendant/Counterclaimant Great American Insurance Company's Motion to Compel Discovery Related to Damages (d/e 24) is DENIED.

ENTER: September 20, 2021

                        *s/ Tom Schanzle-Haskins*
                        TOM SCHANZLE-HASKINS
                        UNITED STATES MAGISTRATE JUDGE